| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Vahe Khojayan (SBN261996)<br>KG LAW, APC<br>1010 N. Central Ave, Ste 450<br>Glendale, CA 91202<br>Tel: (818) 245-1340<br>Fax: (818) 245-1341<br>Email: vahe@kglawapc.com<br><br><br>*Attorney for Plaintiff* | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br>Titus Emil Iovita<br><br><br><br><br>Debtor(s). | CASE NO.: 2:20-bk-19727-ER<br><br>CHAPTER: 11<br><br>ADVERSARY NO.: |
| Titus Emil Iovita<br><br><br><br>Plaintiff(s)<br>Versus<br>Siboney Monge, Malibu Reconveyance, LLC<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** _____ | **Address:**<br>☐  255 East Temple Street, Los Angeles, CA 90012<br>☐  3420 Twelfth Street, Riverside, CA 92501<br>☐  411 West Fourth Street, Santa Ana, CA 92701<br>☐  1415 State Street, Santa Barbara, CA 93101<br>☐  21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                                    Page 2                                    **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Titus Emil Iovita | DEFENDANTS<br><br>Siboney Monge, Malibu Reconveyance, LLC |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>KG Law, APC, 1010 N. Central Ave, Ste 450,<br>Glendale, CA 91202 | **ATTORNEYS** (If Known) |

| PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Objection to Claim, Quite Title, Declaratory Relief

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
   actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
   if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $   0.00 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Titus Emil Iovita | BANKRUPTCY CASE NO.<br>2:20-bk-19727-ER | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Ernest Robles |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>01/27/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Vahe Khojayan | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  Vahe Khojayan (SBN261996)
2  Sasoon Sardarian (SBN235088)
   KG Law, APC
3  1010 N. Central Ave. Ste 450
   Glendale, CA  91202
4  Tel: (818) 280-4280
   Fax: (818) 280-4281
5  E-mail: vahe@kglawapc.com
6
   Attorneys for Plaintiff
7  TITUS EMIL IOVITA
8
9
                    **UNITED STATES BANKRUPTCY COURT**
10                   **CENTRAL DISTRICT OF CALIFORNIA**
                     **LOS ANGELES DIVISION**
11
12 In re:                              | Case No: 2:20-bk-19727-ER
13   TITUS EMIL IOVITA                  | Adversary Case No:
14                      Debtors.
15                                      | Chapter  11
16 TITUS EMIL IOVITA
17                      Plaintiff       | **COMPLAINT**
18 v.                                      **(1) OBJECTING TO  CLAIM OF**
                                           **     SIBONEY MONGE**
19 SIBONEY MONGE, MALIBU                    **(2) QUIET TITLE IN PROPERTY OF**
   RECONVEYANCE, LLC,                       **     THE ESTATE**
20                                          **(3) DECLARATORY RELIEF**
                      Defendant(s)
21
22
23
24
        Plaintiff and Debtor herein, TITUS EMIL IOVITA ("Plaintiff"), through his attorneys
25
   Vahe Khojayan and Sasoon Sardarian, complains against purported creditor SIBONEY MONGE
26
   and MALIBU RECONVEYANCE, LLC ("Defendants") objecting to the scheduled claim of
27
   Siboney Monge and requesting that the lien of Siboney Monge/Malibu Reconveyance LLC
28

                                      - 1 -

                                  **COMPLAINT**

secured by the Debtor's property located at 18604 Newman Ave, Riverside, CA 92508 (the
""Riverside Property") be deemed invalid.

### Jurisdiction

1. On October 28, 2020 Plaintiff herein, filed a petition for relief under chapter 11 of Title
   11 of the United States Code. Plaintiff is the debtor in this Chapter 11 case.

2. This court has jurisdiction over this adversary proceeding including under the provisions
   of 28 U.S.C. §157(b)(1), and 28 U.S.C. § 157(b)(2)(B), and this is a core proceeding
   including pursuant to 28 U.S.C. §157(b)(2)(B).

3. Pursuant to Bankruptcy Rule 7008, Plaintiff alleges that this action is a core proceeding
   brought under and pursuant to the authority contained in 28 U.S.C. (b)(2)(A); (B) and (O)
   and further requests that this Court make a final order or judgment in this proceeding.

4. Venue is proper in the Central District of California, Los Angeles, pursuant to 28 U.S.C.
   § 1408 and 1409(a).

### Reason for Adversary Proceedings

5. By this case Plaintiff not only objects to Defendant Siboney Monge's scheduled secured
   claim, but also seeks to invalidate the lien against Plaintiff's Riverside Property that
   secures Defendant's claim.

6. As a proceeding seeking to invalidate a lien an adversary proceeding is necessary
   pursuant to Fed. R. Bankr. P. 7001.

7. Pursuant to Fed. R. Bankr. P. 3007(b) claim objection is included in this adversary
   proceeding.

### The Parties

8. Plaintiff Titus Emil Iovita is the debtor in the underlying chapter 11.

9. Defendant Siboney Monge, is a disputed creditor who claims interest in Riverside
   Property by virtue of a disputed note and deed of trust as specified *infra*.

– 2 –

**COMPLAINT**

10. Defendant Malibu Reconveyance LLC, is a limited liability company fully owned by Defendant Siboney Monge.

## FACTUAL BACKGROUND

11. Plaintiff is the owner of the property located at 18604 Newman Street, Riverside, CA 92508 ("Riverside Property").

12. The legal description of the Riverside Property is:

> **The Property in the County of Riverside, State of California Described as:**
> **Lot 292 of Rinehart Acres, as per map recorded in Book 13, Page 84 of Maps,**
> **in the Office of the County Recorder of Riverside County, State of**
> **California, APN: 267-140-015-6**

13. Defendants Siboney Monge and Malibu Reconveyance, LLC claims interest and lien against the Riverside Property in the form of a second deed of trust.

14. On or about August 26, 2009 Plaintiff entered into a California Residential Purchase Agreement and Joint Escrow Instructions to purchase the Riverside Property from Defendant Siboney Monge. Attached hereto as Exhibit 1 is a true and correct copy of that agreement.

15. On or about December 3, 2009 Defendant Siboney Monge executed a grant deed that transferred the Riverside Property to Plaintiff. That grant deed was recorded in Riverside County Assessor, Clerk & Recorder's Office on December 14, 2019. Attached hereto as Exhibit 2 is a true and correct copy of that grant deed.

16. As part of the purchase and sale transaction, Plaintiff paid Defendant Siboney Monge $250,000 part of which was financed by a mortgage loan in the amount of $241,656. That loan was secured by a first deed of trust in favor of Plaza Home Mortgage.

17. Plaintiff paid to Defendant Siboney Monge full fair market value for the Riverside Property as evidenced by an unbiased third party appraisal necessary to obtain the government backed first deed of trust purchase money loan.

- 3 -

**COMPLAINT**

18. Sometime on February 1, 2010 Plaintiff visited Defendant Siboney Monge's house. During that meeting the parties discussed what would happen to Plaintiff's Riverside Property in the event of Plaintiff's death.

19. During that visit, Defendant Siboney Monge, who was Plaintiff's friend, persuaded Plaintiff to execute a document that would ensure that the Riverside Property avoids escheat in the event of Plaintiff's death and passes to Defendant Siboney Monge.

20. Thereafter, Defendant Siboney Monge presented Plaintiff with two documents titled "Straight Note" (hereinafter "Note") and "Deed of Trust and Assignment of Rents" (hereinafter "Deed of Trust") which Plaintiff signed. Attached hereto as Exhibit 3 is a true and correct copy of these documents.

21. On the Deed of Trust, defendant Malibu Reconveyance, LLC was named as trustee of the deed of trust and Defendant Siboney Monge was named as beneficiary.

22. At the same time, Defendant Siboney Monge represented to Plaintiff that the Note and the Deed of Trust would not be recorded against the Riverside Property, and that the only reason for these documents was to avoid escheat in the event of Plaintiff's death.

23. On these conditions, and based upon these representations by Siboney Monge (a seasoned real estate professional in the full time business of property foreclosure and reconveyance and the sole owner of Defendant Malibu Reconveyance, LLC), Plaintiff agreed and executed the documents.

24. No consideration was ever paid by Defendant Siboney Monge or any of the Defendants to Plaintiff for the Note and Deed of Trust.

25. No consideration was ever received by Plaintiff in exchange for signing the Note or the Deed of Trust.

26. In accordance with the promises made the Note and the Deed of Trust were not recorded.

27. Since then, Plaintiff was able to refinance the Riverside Property without any issues and without any interference by Defendants.

28. Specifically, in 2016 Plaintiff was able to refinance the Riverside Property, through a loan broker who was referred to Plaintiff by Defendant Siboney Monge.

- 4 -

**COMPLAINT**

29. During the 2016 refinance the issue of the Note and Deed of Trust, never came up, and Defendants never demanded payment or even mentioned the Note during Plaintiff's refinance procedure, despite being fully aware that Plaintiff was refinancing the Riverside Property.

30. On September 23, 2019, over nine years after the execution, without any warning, Defendants recorded the Deed of Trust against Riverside Property.

## FIRST CAUSE OF ACTION

## OBJECTION TO SCHEDULED CLAIM OF SIBONEY MONGE AND MALIBU RECONVEYANCE LLC

31. Plaintiff incorporates each of the above allegations in previous paragraphs inclusive as though set forth in full herein.

32. Defendants claim an interest against estate property.  Defendants' proof of claim originally filed on November 23, 2020 was subsequently withdrawn on December 8, 2020.  Defendants' claim was scheduled on Plaintiff's Schedule D and marked as disputed.

33. Therefore, Defendants do not enjoy presumption of validity of their claim.

34. Nonetheless, Defendants continue to assert a claim against Plaintiff's bankruptcy estate by virtue of their lien against the Riverside Property that is property of the estate.

35. Under 11 U.S.C. § 502(b) if an interested party objects, "court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in such amount except to the extent that

    **(1)** such claim is unenforceable against the debtor and property of the debtor, under any agreement or **applicable law** for a reason other than because such claim is contingent or unmatured; 11 U.S.C. § 502(b)(1) (emphasis added).

36. Defendants' claim in this case is barred under applicable California statutes for lack of consideration, for being a sham instrument and for being induced and executed under false pretenses.

– 5 –

**COMPLAINT**

## Defendants' Claim Should Be Disallowed For Lack Of Consideration.

37. Defendants' claim in this case is barred under applicable California law for lack of consideration.

38. Defendants' claim is based on the Note and the Deed of Trust.

39. Under California law, a promissory note is a form of a negotiable instrument. Cal. U. Com. Code § 3104.

40. Negotiable instruments are subject to the defense of failure of consideration. Cal. U. Com. Code § 3303(b).

41. Additionally, the Note and the Deed of Trust shall be rescinded since no consideration was paid by Defendant, and the consideration for the Note and Deed of Trust failed through the fault of Defendants. Cal. Civ. Code § 1689.

42. Plaintiff never bargained for or received any consideration for the Note and the Deed of Trust. Plaintiff received no benefit whatsoever from the Note and the Deed of Trust.

43. In this case the Note and the Deed of Trust are unsupported by any consideration, and are therefore void.

44. The Deed of Trust is not valid without the Note. Therefore, the invalidity of the Note also invalidates the Deed of Trust.

## The Note And The Deed Of Trust Are Sham Instruments.

45. A promissory note is invalid if it was intended to be void, i.e. sham not intended between the parties as a jural act.

46. In this case, the Note and the Deed of Trust were intended only to be held in place to avoid escheat of the Riverside Property in the event of Plaintiff's death.

47. As such, when the parties executed the Note and the Deed of Trust, there was never any intent to act upon it, to record the Deed of Trust, or to demand the repayment of the sums stated in the Note. In fact, the opposite was represented to Plaintiff by Defendants. That the Deed of Trust would not be recorded.

48. This is evidenced by the fact that Plaintiff was able to refinance the Riverside Property in 2016, through a loan broker that was referred to Plaintiff by Defendants. Defendants

**COMPLAINT**

knew of said refinance and never once insisted that the Note be repaid or that the
obligations on the Deed of Trust be satisfied.

49. This is further evidenced by the fact that the Deed of Trust was not recorded until over
nine (9) years after its signing.

50. Since the parties never intended for the Note and the Deed of Trust to be jural acts, these
documents are sham and void.

**The Note And The Deed Of Trust Were Signed Under False Pretenses.**

51. The consent of Plaintiff to sign the Note and Deed of Trust was given based on
representations by Defendant Siboney Monge that the Note and the Deed of Trust would
only serve to ensure that the Riverside Property did become subject to escheat.

52. Therefore, Plaintiff signed the Note and the Deed of Trust pursuant to fraudulent
representations made by Defendant Siboney Monge.

53. Specifically, on February 1, 2010, Defendant Siboney Monge represented to Plaintiff that
the Note and the Deed of Trust were only meant to ensure that the Riverside Property
does not escheat after Plaintiff's death.  Such representation was made verbally by
Defendant Siboney Monge to Plaintiff, at Siboney Monge's primary residence located in
Reseda, CA on February 1, 2010.

54. When Defendant Siboney Monge made the representations mentioned, she did so with
knowledge that said representations were false.

55. By making the representations, Defendant Siboney Monge intended to defraud Plaintiff
and induce Plaintiff into signing the Note and the Deed of Trust, which gave her unfair
and unbargained for interest in the Riverside Property.

56. Plaintiff was  a longtime friend of Defendant Siboney Monge.  Siboney Monge was also
heavily involved in real estate business, in fact, a full time seasoned professional in the
very business of foreclosure and reconveyance upon the properties and sole owner of co-
defendant Malibu Reconveyane LLC.  As such, Plaintiff justifiably believed that
Defendant Siboney Monge knew more about real estate transactions than he did.

– 7 –

**COMPLAINT**

Defendant Siboney Monge also acted as a de facto real estate agent and "arranger of loans" as the sole party acting in such capacity in Plaintiff's initial purchase of the Riverside Property. Defendant's role in such capacity gave rise to fiduciary duties to Plaintiff as well in addition to the inducements she procured by virtue of her purported friendship with Plaintiff and her superior position with regard to knowledge about real estate and finance transactions. Therefore, Plaintiff trusted her and justifiably relied on representations made by Defendant Siboney Monge.

57. Defendants, acted contrary to their false representations by breaching their promise and contrary to the representations recorded the Deed of Trust against the Riverside Property.

58. As a result of Defendants' misrepresentations, Plaintiff suffered damages in the form of the recordation of the sham documents and Defendants attempts to foreclose upon the Riverside Property based on these documents.

59. Defendant's fraudulent conduct makes the Deed of Trust and the Note unenforceable pursuant to California Civil Code § 1689.

60. For the reasons stated *supra*, the Note and the Deed of Trust are void for failure of consideration, for being sham documents and for being created and signed under false pretenses.

61. Wherefore, Plaintiff prays that the court disallows the scheduled claim of Defendants Siboney Monge and Malibu Reconveyance, LLC pursuant to 11 U.S.C. § 502(b)(1), since Defendants' claim is unenforceable under applicable California law.

## SECOND CAUSE OF ACTION
### QUIET TITLE

62. Plaintiff incorporates each of the above allegations, in preceding paragraphs as though set forth in full herein.

63. This action concerns the title to the Riverside Property. Plaintiff is the owner of the Riverside Property in fee simple.

64. Defendants have a claim adverse to Plaintiff as security interest in the Riverside Property by virtue of the Note and Deed of Trust. In the Deed of Trust Defendant Sibney Monge

– 8 –

**COMPLAINT**

is named as beneficiary and Defendant Malibu Reconveyane, LLC is names as trustee. Plaintiff is informed and believes and thereupon alleged that Siboney Monge is the sole de facto beneficial owner of Malibu Reconveyance LLC or otherwise controls this entity through other individuals, at least one of which shares her same last name.

65. The Note and the Deed of Trust are invalid, as no consideration was ever paid or received for the Note and the Deed of Trust and these documents were never meant to have jural effect between the parties, at least as affirmatively represented to Plaintiff by Defendants.

66. Plaintiff seeks to quiet title against Defendants effective the Petition date of October 28, 2020.

67. Plaintiff seeks a declaration that the title of the Riverside Property is vested in Plaintiff free and clear of the lien claimed by Defendants, and that Defendants are to have no estate, right, title or interest in said real property and the Defendants are to be forever enjoined from asserting any right, estate of title, or interest in the subject property adverse to Plaintiff.

68. Plaintiff is entitled to judicial determination quieting title to the Riverside Property in Plaintiff's name against Defendants.

### THIRD CAUSE OF ACTION
### <u>DECLARATORY RELIEF</u>

69. Plaintiff incorporates each of the above allegations, in preceding paragraphs as though set forth in full herein.

70. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning Defendant's claim of lien rights against the Riverside Property, and the validity of Defendants' lien.

71. Plaintiff contends that as a result of misrepresentations made by Defendant Siboney Monge, and the fact that there was no consideration paid by Defendants for the Note and Deed of Trust, and that said documents were effectuated as a result of fraud or other misrepresentations, Defendants' Note and Deed of Trust are void, voidable and

**COMPLAINT**

unenforceable. As a result Defendants have no claim, lien or interest in the Riverside Property.

72. Conversely, it is presumed because of their actions to enforce the Deed of Trust that Defendants contend the opposite and contend that the Note and Deed of Trust are valid and enforceable.

73. Plaintiff requests that the Court find that Defendants have no valid lien against the Riverside Property.

74. Plaintiff contends that in order for Defendants to have a valid lien against the Property, the underlying Note and the Deed of Trust need to be valid.

75. Since the underlying Note and the Deed of Trust are invalid Defendants have no lien against the Riverside Property.

76. Plaintiff, therefore desires judicial determination of the parties' rights and duties, and a declaration as to whether Defendants have a valid lien against the Riverside Property, and as to whether the Note and Deed of Trust are valid and enforceable.

77. A judicial determination is needed because Defendants' insistence on maintaining a lien against Riverside Property deprives Plaintiff of the equity, title and use and enjoyment thereof, including the right to sell or hypothecate the Riverside Property free and clear of Defendants' lien.

## PRAYER FOR RELIEF

78. WHEREFORE, Plaintiff TITUS EMIL IOVITA prays for:

    a.  Judgment that Defendant's claim is disallowed and that Defendants hold no valid claim against Plaintiff's bankruptcy estate.

    b.  That Defendant's lien created by virtue of the Note and the Deed of Trust be released from Riverside Property and conclusively invalidated.

    c.  A judicial declaration that the Note and Deed of Trust and any lien recorded pursuant thereto are void, and of no legal effect;

    d.  For costs of such and attorney fees incurred herein;

    e.  For such other relief as the Court deems just and proper.

**COMPLAINT**

Dated:  January 27, 2021

Respectfully Submitted,

By: _____

Vahe Khojayan
Attorney for Plaintiff

- 11 -

**COMPLAINT**

1

## VERIFICATION

2

3   State of California, County of Los Angeles.

4

5   I, Titus Emil Iovita, have read the foregoing cause of action/claim for Quiet Title in the

    Complaint to which this Verification is appended. I am the Plaintiff in such action and make this

6   verification for that reason.  The matters stated in the claim for Quiet Title are true of my own

7   knowledge except as to those matters which are stated on information and belief, and as to those

8   I believe them to be true.  I declare under penalty of perjury under the laws of the State of

9   California and the United States of America that the foregoing is true and correct.

10

11  Executed on 01/27/2021                    By: _____

12                                                Titus Emil Iovita

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

EXHIBIT 1



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 10/02)

Date _AUGUST 26, 2009_ at _LOS ANGELES_ , California.

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _TITUS E IOVITA, A SINGLE MAN_ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _18604 NEWMAN AVENUE_ , Assessor's Parcel No. _267-140-015-6_ situated in _RIVERSIDE, CA 92508_ , County of _RIVERSIDE_ , California, ("Property").
   C. **THE PURCHASE PRICE** offered is _TWO HUNDRED FIFTY THOUSAND_ Dollars $ _250,000.00_
   D. **CLOSE OF ESCROW** shall occur on _____ (date/□ _____ Days After Acceptance).

2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (II) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _5,000.00_
      to the agent submitting the offer (or to □ _____ ), by personal check
      (or □ _____ ), made payable to _ESCROW PRODUCTIONS_
      which shall be held uncashed until Acceptance and then deposited within 3 business days after
      Acceptance (or □ _____ ), with
      Escrow Holder, (or □ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____
      within _____ Days After Acceptance, or □ _____ . . . . . . . . . . . . . . . . . . . . .$ _241,250_
   C. **FIRST LOAN IN THE AMOUNT OF**
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at
      maximum interest of _____% fixed rate, or _____% initial adjustable rate with a maximum
      interest rate of _____%, balance due in _____ years, amortized over _____ years. Buyer
      shall pay loan fees/points not to exceed _____. (These terms apply whether the designated loan
      is conventional, FHA or VA.)
      (2) □ FHA □ VA: (The following terms only apply to the FHA or VA loan that is checked.)
      Seller shall pay _____% discount points. Seller shall pay other fees not allowed to be paid by
      Buyer, □ not to exceed $_____. Seller shall pay the cost of lender required Repairs
      (including those for wood destroying pest) not otherwise provided for in this Agreement, □ not to
      exceed $ _____. (Actual loan amount may increase if mortgage insurance premiums,
      funding fees or closing costs are financed.)
   D. **ADDITIONAL FINANCING TERMS:** □ Seller financing, (C.A.R. Form SFA); □ secondary financing, . . . .$ _____
      (C.A.R. Form PAA, paragraph 4A); □ assumed financing (C.A.R. Form PAA, paragraph 4B)
   E. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . .$ _3,750.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _250,000.00_
   G. **LOAN APPLICATIONS:** Within 7 (or □ _____) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or □ _____) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. **LOAN CONTINGENCY REMOVAL:** (I) Within 17 (or □ _____) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (II) (if checked) ☒ the loan contingency shall remain in effect until the designated loans are funded.
   J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, □ is NOT) contingent upon the Property appraising at no less than the specified purchase price. Buyer shall, as specified in paragraph 14, remove the appraisal contingency or cancel this Agreement when the loan contingency is removed (or, if checked, □ within 17 (or □ _____) Days After Acceptance).
   K. □ **NO LOAN CONTINGENCY** (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. □ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or □ _____) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or □ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at _5:00_ AM/PM, ☒ on the date of Close Of Escrow; □ on _____ ; or □ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (II) consult with their insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( _TI_ )(_____)
Seller's Initials ( _SAM_ )(_____)

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

**RPA-CA REVISED 10/02 (PAGE 1 OF 8)**  Print Date BDC Oct 02

**C.** Tenant occupied property. otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR **(II)** (If checked) ☐ **Tenant to remain in possession.** The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR **(iii)** (if checked) ☐ **This Agreement is contingent** upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14. If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

**D.** At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

**E.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS (If checked):** Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14.

**A.** WOOD DESTROYING PEST INSPECTION:

(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

**B.** OTHER INSPECTIONS AND REPORTS:

(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____

(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____

(3) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____

(4) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

**C.** GOVERNMENT REQUIREMENTS AND RETROFIT:

(1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.

(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law._____

**D.** ESCROW AND TITLE:

(1) ☒ Buyer ☒ Seller shall pay escrow fee *EACH TC PAY OWN 50% - 50%*
Escrow Holder shall be *ESCROW PRODUCTIONS*

(2) ☐ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12 _____
Owner's title policy to be issued by _____
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**E.** OTHER COSTS:

(1) ☐ Buyer ☐ Seller shall pay County transfer tax or transfer fee _____

(2) ☐ Buyer ☐ Seller shall pay City transfer tax or transfer fee _____

(3) ☐ Buyer ☐ Seller shall pay HOA transfer fee _____

(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees _____

(5) ☐ Buyer ☐ Seller shall pay the cost, not to exceed $ _____, of a one-year home warranty plan, issued by _____
with the following optional coverage: _____

(6) ☐ Buyer ☐ Seller shall pay for _____

(7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.** (1) Seller shall, within the time specified in paragraph 14, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).

(2) Buyer shall, within the time specified in paragraph 14, return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

Buyer's Initials ( *TT* )( _____ )
Seller's Initials ( *SAM* )( _____ )

**(4)** If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After** delivery in person, or **5 Days After** delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

**(5)** Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

**B.** **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

**C.** **DATA BASE DISCLOSURE:** NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

**6.** **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

**A.** **SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance** to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision.

**B.** If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14.

**7.** **CONDITIONS AFFECTING PROPERTY:**

**A.** Unless otherwise agreed: (i) the **Property is sold (a) in its PRESENT physical condition** as of the date of Acceptance and **(b) subject to Buyer's Investigation rights;** (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**B.** SELLER SHALL, within the time specified in paragraph 14, **DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS AFFECTING THE** PROPERTY, including known insurance claims within the past five years, **AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.**

**C.** **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**D.** NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

**8.** **ITEMS INCLUDED AND EXCLUDED:**

**A.** **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

**B.** **ITEMS INCLUDED IN SALE:**

**(1)** All EXISTING fixtures and fittings that are attached to the Property;

**(2)** Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; _____

**(3)** The following items: _____

**(4)** Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

**(5)** All items included shall be transferred free of liens and without Seller warranty.

**C.** **ITEMS EXCLUDED FROM SALE:** _____

**9.** **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14. Within the time specified in paragraph 14, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Buyer shall complete Buyer Investigations and, as specified in paragraph 14, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( _TJ_ )( _____ )
Seller's Initials ( _SAM_ )( _____ )

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

**RPA-CA REVISED 10/02 (PAGE 3 OF 8)**

MASTER COPY

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

**10. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**12. TITLE AND VESTING:**

 **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14.

 **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (I) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

 **C.** Within the time specified in paragraph 14, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

 **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller.  Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES.  CONSULT AN APPROPRIATE PROFESSIONAL.

 **E.** Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**13. SALE OF BUYER'S PROPERTY:**

 **A.** This Agreement is NOT contingent upon the sale of any property owned by Buyer.

 **OR B.** ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form RRCR).**

 **A.** **SELLER HAS: 7 (or ☐ _____) Days** After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

 **B.** **(1) BUYER HAS: 17 (or ☐ _____) Days** After Acceptance, unless otherwise agreed in writing, to:

   (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and

   (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

  **(2)** Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

  **(3)** By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form RRCR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____) **Days** after receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: (i) government-mandated inspections or reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B.

 **C.** **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

  **(1) Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

  **(2) Continuation of Contingency:** Even after the expiration of the time specified in 14B(1), Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

  **(3) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (I) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.

  **(4) Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation

---

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

**RPA-CA REVISED 10/02 (PAGE 4 OF 8)**

MASTER COPY

Buyer's Initials (_____)(_____)
Seller's Initials (_SMM_)(_____)

| Reviewed by _____ Date _____ |

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES :** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____) Days Prior to Close Of Escrow, **NOT AS A CONTINGENCY OF THE SALE**, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**
**BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

Buyer's Initials _TI_ / _____ Seller's Initials _SAM_ /

17. **DISPUTE RESOLUTION:**
A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply whether or not the Arbitration provision is initiated. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIATED.**

B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**
**(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
**(3) BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17 A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

Buyer's Initials X _TI_ / _____ Seller's Initials _SAM_ /

Buyer's Initials ( _TI_ )( _____ )
Seller's Initials ( _AM_ )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 10/02 (PAGE 5 OF 8)**

MASTER COPY

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _4% OF PURCHASE_
    C. _SELLER TO CREDIT BUYER 4% OF PURCHASE PRICE_

26. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days, unless otherwise required by Law.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours **(or as otherwise specified in paragraph 14C(4))** to remove a contingency or perform as applicable.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. **Singular and Plural** terms each include the other, when appropriate.

Buyer's Initials ( _TI_ )( _____ )
Seller's Initials ( _AM_ )( _____ )

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 10/02 (PAGE 6 OF 8)**

Reviewed by _____ Date _____



**27. AGENCY:**

**A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

**B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

**C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent ___N / A_____ (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
Selling Agent ___N / A_____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and C, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **2** business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

| Buyer's Initials ( | )( | ) |
|---|---|---|
| Seller's Initials ( | )( | ) |

| Reviewed by _____ Date _____ |
|---|

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC
**RPA-CA REVISED 10/02 (PAGE 7 OF 8)**

EQUAL HOUSING
OPPORTUNITY

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it by 5:00 PM on the third calendar day after this offer is signed by Buyer (or, if checked, ☐ by _____ (date), at _____ AM/PM).

Date _08.26.09_____     Date _____

BUYER ✗ _TITUS E. IOVITA_____     BUYER _____

_TITUS E. IOVITA_____
**(Print name)**                          **(Print name)**
_9700 AVIATION BL #2 LA, CA 90045_
**(Address)**

**32. BROKER COMPENSATION FROM SELLER:**
   **A.** Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   **B.** If escrow does not close, compensation is payable as specified in that separate written agreement.
**33. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** _____

Date _08-26-09_____     Date _____

SELLER _Siboney C A Monge, Trustee_ SELLER _The Twelve Oaks Trust_

_SIBONEY. CA MONGE, TRUSTEE_____
**(Print name)**                          **(Print name)**
_7050 BERTRAND AVE RESEDA, CA 91335_
**(Address)**

( ___/___ )  **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
**(Initials)**  agent on (date) _____ at _____ AM/PM. **A binding Agreement is created when** a Copy of Signed Acceptance is personally received by Buyer or Buyer's **authorized agent** whether or not confirmed in this document. Completion of this confirmation is **not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 27.
**C.** If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D.** COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling **Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _____
By _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) _____
By _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate.  License # _____

---

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics


The System ■ for Success™
Published by the
California Association of REALTORS®

**RPA-CA REVISED 10/02 (PAGE 8 OF 8)**



| Reviewed by | _____ Date _____ |


EQUAL HOUSING OPPORTUNITY

# EXHIBIT 2

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

DOC # 2009-0641384
12/14/2009 08:00A Fee:9.00
Page 1 of 1 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY
**FIDELITY-VAN NUYS**

AND WHEN RECORDED MAIL TO

TITUS· E. IOVITA
18604 NEWMAN AVE.
RIVERSIDE, CA 92508

*19606424*



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 042 |



Assessor's Parcel No. 267-140-015-6

TPA 088-053

# GRANT DEED

The undersigned grantor(s) declare(s):
Documentary transfer tax is $275.00
(X) computed on full value of the interest of property conveyed, or
( ) computed on the full value less the value of liens or encumbrances
    remaining thereon at the time of sale.
(X) Unincorporated area:  ~~RIVERSIDE~~, and

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**

SIBONEY A. MONGE, TRUSTEE TO THE TWELVE OAKS TRUST

**hereby GRANTS(S) TO**

TITUS E. IOVITA, a single man

the following described real property in the  UNINCORPORATED AREA OF RIVERSIDE,
County of RIVERSIDE,  State of California:

LOT 292 OF RINEHART ACRES, AS PER MAP RECORDED IN BOOK 13, PAGE 84 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, STATE OF CALIFORNIA.

**PROPERTY ADDRESS:**  18604 NEWMAN AVE., RIVERSIDE, CA, 92508
**DATED:** August 31, 2009

**STATE OF CALIFORNIA,**
**COUNTY OF** _Los Angeles_ ) SS
On _12-03-2009_ before me,
_Angelica M Avalos_, a Notary Public,
personally appeared _SIBONEY A MONGE_

who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s),
or the entity upon which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the
laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

SIBONEY A. MONGE, TRUSTEE TO THE
TWELVE OAKS TRUST
_to The Twelve Oaks Trust_

ANGELICA M. AVALOS
Commission # 1669408
Notary Public - California
Los Angeles County
My Comm. Expires May 23, 2010

(This area for official notarial seal)

**Title Order Number.** 19606424        Escrow No. 23628-02
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

EXHIBIT 3

**DO NOT DESTROY THIS NOTE:** When paid, this note and the Deed of Trust must be surrendered to the Malibu Reconveyance, LLC with request for reconveyance.

# STRAIGHT NOTE

$ 350,000.00                    LOS ANGELES                    , California, February 1, 2010

February 1, 2010                                                              after date,

for value received, **TITUS E. IOVITA, A SINGLE MAN**                          promises to pay

**to** SIBONEY A MONGE, AN UNMARRIED WOMAN

_____

_____ , or order,

**at** 7050 BERTRAND AVE RESEDA CA 91335

the sum of THREE HUNDRED THOUSAND DOLLARS AND 0/100 CENTS ($350,000.00)        Dollars,

with interest from **February 1, 2010 until paid, at the rate of 1% per cent, per annum.**

## THIS NOTE IS A BALLOON NOTE SECURED BY A DEED OF TRUST AND ALL INTEREST AND PRINCIPAL  BALANCE IS DUE AND PAYABLE ON: 02/01/2020 OR  SOONER.

If the Trustor shall sell, convey or alienate said property, or any part  hereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligation secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

This Note is subject to Section 2966 of the Civil Code of the State of California, which provides that the holder of this note shall give written notice to the Trustor, or their successors in interest, of prescribed information at least Sixty (60) days and not more than One Hundred Fifty (150) days before any balloon payment.

Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees and costs, court fees and costs plus Principal and Interest in lawful money of the United States of America.

Should interest not be so paid, it shall thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law. Should default be made in the payment of any installment of interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees. Principal and interest payable in lawful money of the United States of America. This note is secured by a certain DEED OF TRUST to the Malibu Reconveyance, LLC, a California corporation, as TRUSTEE.

TITUS E. IOVITA              02.01.10          SIBONEY A MONGE          2-1-10

_Titus_                                        _Siboney A Monge_

18604 NEWMAN ST                                21000 Devonshire St#102

RIVERSIDE CA 92508                             CHATSWORTH CA 01335

**RECORDING REQUESTED BY:**

SIBONEY A MONGE

**WHEN RECORDED MAIL TO:**

SIBONEY A. MONGE ⟨SM⟩
~~21000 DEVONSHIRE ST. # 102A~~
~~CHATSWORTH, CA 91311~~
7050 BERTRAND AVE.
RESEDA, CA 91335

**2019-0375305**

09/23/2019 01:43 PM Fee: $ 207.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

6080

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 267-140-015-6         **DEED OF TRUST AND ASSIGNMENT OF RENTS**

**This DEED OF TRUST,** made 2/1/2010, between TITUS E. IOVITA, A SINGLE MAN, herein called Trustor, whose address is 18604 NEWMAN AVENUE, RIVERSIDE CA 92508 and Malibu Reconveyance, LLC herein called TRUSTEE, and SIBONEY A. MONGE, AN UNMARRIED WOMAN, herein called BENEFICIARY.

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the County of RIVERSIDE, State of California, described as:
LOT 292 OF RINEHART ACRES, AS PER MAP RECORDED IN BOOK 13, PAGE 84 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, STATE OF CALIFORNIA.                                        More
Commonly Known as:  18604 Newman Avenue, Riverside, CA 92508

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** (1) Performance of each agreement of Trustor incorporated by reference or contained herein. (2) Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the **PRINCIPAL SUM OF $350,000.00** executed by Trustor in favor of Beneficiary or order. (3) Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it so secured.

The following is a copy of provisions (1) to (14), inclusive, of the fictitious Deed of Trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as set forth at length therein.

**To protect the Security of this Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Deed of Trust and Assignment of Rents

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do, without notice or demand upon Trustor, and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving onto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be

conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

Dated: _FEBRUARY  01, 2010_

STATE OF CALIFORNIA                    }ss
COUNTY OF _LOS ANGELES_            }

On _FEBRUARY  01, 2010_                    before me
_ANGELICA M AVALOS, Public NOTARY_

personally appeared _TITUS  E  IOVITA_
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY SIGNATURE

_____
TITUS E. IOVITA
_02. 01. 10_
_____
DATE

ANGELICA M. AVALOS
Commission # 1669408
Notary Public - California
Los Angeles County
My Comm. Expires May 23, 2010

SPACE ABOVE RESERVED FOR NOTARY SEAL

Deed of Trust and Assignment of Rents

DOC #2019-0375305  Page 4 of 4

**DO NOT RECORD**

**REQUEST FOR FULL RECONVEYANCE**
**To be used only when note has been paid.**

A reconveyance will be issued upon presentation to Trustee of this request properly
signed and accompanied by the reconveyance fee, the Deed of Trust, the original Note or Notes secured by
said Deed of Trust, and any receipt or document evidencing any other indebtedness secured thereby.

TO:Malibu Reconveyance, LLC, TRUSTEE:

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now hold by you under the same.

Dated:

_____

_____     MAIL TAX RECONVEYANCE TO:

_____     _____

_____     _____

_____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.  Both must be delivered to the Trustee at for cancellation before reconveyance will be made.

Deed of Trust and Assignment of Rents